UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC., CHECK-MATE INDUSTRIES, INC., CHECK-MATE INTERNATIONAL PRODUCTS, INC., NORDON, INC., and THOMAS PIERCE d/b/a PIERCE DESIGN, <br><br> Plaintiffs, <br><br> v. <br><br> FREED DESIGNS, INC., <br><br> Defendant. | Civil Action No. 1:14-cv-00461-SM |

**MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF SIG SAUER, INC., TO AMEND ITS AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIM**

**INTRODUCTION**

Plaintiff SIG Sauer, Inc. ("SIG Sauer"), recently discovered substantial evidence that Robert Freed, the sole named inventor of the asserted patent, U.S. Patent No. 6,928,764 ("the '764 Patent"), and his patent counsel, James L. Davison, committed inequitable conduct during the prosecution of the '764 Patent. Specifically, SIG Sauer contends that Mr. Freed and his patent counsel intentionally withheld two material prior art references from the United States Patent and Trademark Office ("USPTO"), thereby deceiving the USPTO. Had those material references been disclosed to the USPTO examiner reviewing Mr. Freed's patent application, the '764 Patent would not have issued. Pursuant to LR 7.1(a)(2), SIG Sauer submits this

memorandum in support of its motion to amend its reply to Defendant's counterclaim to add an affirmative defense of inequitable conduct.[1]

SIG Sauer filed this motion promptly after completing an investigation confirming that its inequitable conduct allegations were based in fact, and would meet the heightened pleading requirements applicable to such accusations under Fed. R. Civ. P. 9(b).  Given the nature of such a defense, courts routinely find it appropriate to wait to plead inequitable conduct until after such an investigation has been completed.  (*See* cases cited on pages 6-7.)  In addition, SIG Sauer's Final Invalidity Contentions served on July 19, 2016 provided Defendant with notice that SIG Sauer was conducting such an investigation, the facts of which SIG Sauer's counsel had begun to uncover when preparing those contentions.  Thus, before bringing this motion, counsel for SIG Sauer had notified Defendant's counsel that they were investigating inequitable conduct and reserved their right to bring that claim into this case.  (*See* Motion to Amend, ¶5, filed herewith.).

Defendant will suffer no undue prejudice from the amendment.  First, discovery in this case is still ongoing, and will not close until December 9, 2016.  *See* Doc. 65 and Elec. Order of July 28, 2016.  With approximately four months left in discovery, the parties have ample time to complete discovery concerning this affirmative defense.  No depositions have been taken to date, and the parties have not yet begun their expert disclosures.  Second, Defendant has been in possession of the material prior art references which form the basis of the proposed affirmative defense for many years, long before the beginning of this litigation, yet failed to produce them in discovery in this case.  Third, the proposed affirmative defense involves prior art that has been

---

[1]  SIG Sauer's proposed Amended Reply is attached to its Motion to Amend as **Exhibit A**, in accordance with LR 15.1(a)(i). The proposed affirmative defense of inequitable conduct is on pages 5-18 of the Amended Reply.

identified in Plaintiffs' Final Invalidity Contentions,[2] which renders them references that the Court will need to address in the context of Plaintiffs' claims and defenses concerning invalidity. Consequently, the proposed amendment could truly only add a single, narrow issue to this case: whether Mr. Freed, or his patent counsel, deprived the USPTO of the prior art at issue with a specific intent to deceive. Fourth, in view of the existing affirmative defense of patent misuse, which also implicates allegations of intentional and fraudulent acts, granting leave to amend should add little to no additional discovery to this case.

For all these reasons, and because the proposed amendment is not futile in view of the substantial facts supporting a finding of inequitable conduct, as described in the Amended Reply (Exh. A to the Motion to Amend), pp.5-18, and as summarized below, leave to amend should be granted in this case.

## OVERVIEW OF INEQUITABLE CONDUCT DEFENSE

SIG Sauer's investigation into the invalidity of the '764 Patent has revealed that Mr. Freed, the sole named inventor listed on the '764 Patent, and James L. Davison, the attorney who prosecuted the application that issued as the '764 Patent, withheld material prior art from the USPTO with an intent to deceive. The substantial facts supporting these contentions are detailed within SIG Sauer's proposed amended affirmative defense. For the Court's convenience, SIG Sauer provides the following overview:

As this Court knows, the '764 Patent is directed to a specific type of grip extender for a handgun. (*See* Exh. A, p.6, ¶11.) Specifically, the heart of the invention underlying the '764 Patent is a specific and coordinated use of, at least, one pair of opposed "tangs" (*e.g.,* No. 26 in

---

[2]  The prior art references which form the basis of the proposed affirmative defense of inequitable conduct were identified in Plaintiffs' Final Invalidity Contentions, and Plaintiffs provided good cause for inclusion of those references. Pursuant to SPR 7.1(b)(2), the inclusion of this additional prior art in Plaintiffs' Contentions is effective.

Fig. 10 of the '764 Patent) and one pair of opposed "ribs" (*e.g.,* No. 23 in Fig. 10) to accomplish engagement of a floor plate of a magazine by the claimed grip extender (*see* Exh. A, pp.7-10, ¶¶16-21; and Fig. 10 below):



During the prosecution of the application underlying the '764 Patent, both Messrs. Freed and Davison were informed by other patent examiners at the USPTO, in connection with co-pending patent applications filed by Mr. Freed addressing similar inventions, of two pieces of prior art: "Bross," U.S. Patent No. 4,495,720, and "Wollman," U.S. Published Patent Application No. 2002/0029506. (*See* Exh. A, pp.10-12, ¶¶22-35.) Messrs. Freed and Davison cannot deny they had actual knowledge of the details of these two references, or deny that they appreciated their materiality – they not only expressly cited them as prior art in the specification of another patent in this same field, but also characterized them in at least two of Mr. Freed's other patent applications in a manner demonstrating their relevance. (*See id.*, pp.13-15, ¶¶36-42.)

Bross and Wollmann invalidate the claims-at-issue in this case, under the broadest reasonable interpretation of the '764 Patent's claims (and particularly in light of the Court's claim construction order, issued on June 6, 2016 (Doc. 58), and/or the Defendant's Final Infringement Contentions). At least for that reason, those references are deemed material prior art. (*See* Exh. A, p.16, ¶¶45-47, citing charts from Plaintiffs' Final Invalidity Contentions showing how these references invalidate the asserted claims under at least Defendant's apparent

4

claim constructions in this case.)  *See also Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) ("if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO").

The single most reasonable inference to be drawn from the evidence is that Messrs. Freed and Davison specifically withheld these two references from the examiner prosecuting the application underlying the '764 Patent *because* those references disclose the purportedly "novel" tang and rib limitations that distinguished Defendant's claims over the prior art of record.  (*See, e.g.*, Exh. A, pp.16-18, ¶¶47-57.)

## ARGUMENT

### I.   STANDARD OF REVIEW

While Fed R. Civ. P. ("Rule") 15(a)(2) provides that leave to amend shall be "freely" given, in this case SIG Sauer assumes that the "good cause" standard under Rule 16(b) applies, because the original deadline for amendment of pleadings passed some time ago, prior to the consolidation of the present action with the related action which had been pending in U.S.D.C. (C.D. Cal.).  *See* Docs. 27, 31 & 38.[3]

SIG Sauer can readily meet the more rigorous requirements of Rule 16(b).  "This [good cause] standard focuses on the diligence (or lack thereof) of the moving party more than it does on the prejudice to the party-opponent."  *Grivois*, 2014 U.S. Dist. LEXIS 10233, at *43-44; *see*

---

[3]   Following the consolidation of the two cases, no new deadline was set for amendments. Under these circumstances, SIG Sauer assumes that Rule 16(b)'s "good cause" standard is applicable here.  *See Grivois v. Wentworth-Douglass Hosp.*, Civil No. 12-cv-131-JL, 2014 DNH 17, 2014 U.S. Dist. LEXIS 10233, *43-44 (D.N.H. Jan. 28, 2014), *citing Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 1994).

5

*also O'Connell v. Hyatt Hotels*, 357 F.3d 152, 155 (1st Cir. 2004).  The fact that discovery is still open weighs against a finding of prejudice.  *See Forrester Envtl. Servs. v. Wheelabrator Techs., Inc.*, Civil No. 10-cv-154-JL, 2011 U.S. Dist. LEXIS 28468, *6-7 (D.N.H. Mar. 7, 2011).[4]

## II. THE COURT SHOULD ALLOW SIG SAUER TO DEFEND ITSELF BASED UPON RECENTLY CONFIRMED INEQUITABLE CONDUCT

As described herein, and in the proposed amended affirmative defense, SIG Sauer has uncovered substantial evidence supporting a finding of inequitable conduct.  Courts recognize that parties need to thoroughly investigate potential inequitable conduct, as SIG Sauer did here, before pleading such claims, so that they can confirm their allegations meet the heightened pleading standards in Rule 9(b).  *See, e.g., Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003); *Freres v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 U.S. Dist. LEXIS 43740, *18-19 (D. Del. May 21, 2009).

The present motion reflects the detailed way that inequitable conduct should be pleaded.  This defense is not based on speculation at the beginning of a case, but rather on facts found after a careful investigation during the litigation.  Such investigations take time.  Indeed, subsequent events (such as statements made to the USPTO in December 2015 by Mr. Davison during the prosecution of another of Mr. Freed's patent applications) serve as additional circumstantial evidence supporting an inequitable conduct defense.  In light of practical concerns like these, courts have allowed parties to plead inequitable conduct even after discovery has closed.  *See*, *e.g.*, *Arrow Int'l, Inc. v. Spire Biomedical, Inc.*, 635 F. Supp. 2d 46, 61 (D. Mass. 2009) (granting motion to amend after close of discovery); *ICU Medical, Inc., v. Rymed Technologies, Inc.*, 674

---

[4] *Cf. Steir*, 383 F.3d at 12 (explaining that a motion to amend is more susceptible to denial when it "prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy ...'"), *quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998).

F. Supp. 2d 574, 576-577 (D. Del. 2009) (same); *Fastek, LLC v. Steco*, Civil No. 10cv0972-MMA (CAB), 2011 U.S. Dist. LEXIS 100735, *5-6 (S.D. Cal. Sept. 2, 2011) (granting leave to take deposition after the close of discovery that may support a motion for leave to amend to plead inequitable conduct). Indeed, this Court has recognized that inequitable conduct can be raised for the first time in a motion for attorneys' fees under 35 U.S.C. §285, at the conclusion of a case, even when the issue was not previously litigated in the case. *See East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, Civil No. 12-cv-517-LM, 2015 DNH 150; 2015 U.S. Dist. LEXIS 99793, *11-12 (D.N.H. July 30, 2015).

It would be unfair to deprive SIG Sauer of the ability to defend itself against Defendant's counterclaim for infringement based on inequitable conduct that SIG Sauer discovered within the past month, the basis for which was made evident by the Court's claim construction order in June 2016 and Defendant's Final Infringement Contentions, served at the end of June (and, as explained below, further supported by statements made on behalf of Mr. Freed as recently as December 2015). This is particularly true where, as here, SIG Sauer's counsel promptly notified Defendant's counsel of their intent to seek leave to assert such a defense and completed their related investigation only days before they conferred with Defendant's counsel on the instant motion.

For the above reasons, SIG Sauer's request to add a defense of inequitable conduct into this case – many months before the close of discovery – is reasonable and consistent with the mandates of both Rule 9(b) and Rule 16(b).

### III. THE CIRCUMSTANCES SUPPORT BRINGING THE DEFENSE OF INEQUITABLE CONDUCT INTO THIS CASE

#### A. SIG Sauer Was Diligent In Bringing This Motion.

In this case, following the claim construction briefing and hearing, this Court issued its claim construction order on June 6, 2016 (Doc. 58). Issuance of that order triggered the parties' obligations to comply with SPR 7.1, *i.e.*, Defendant served its Final Infringement Contentions on June 28, 2016, and 21 days later, Plaintiffs served their Final Invalidity Contentions on July 19, 2016. It was in the course of preparing their invalidity contentions in light of the Court's claim construction and Defendant's Final Infringement Contentions that SIG Sauer's counsel first uncovered evidence of what appeared to be inequitable conduct. As noted above, at the time they served their Final Invalidity Contentions, SIG Sauer provided Defendant with notice that it might seek to add such a defense. Given the gravity of such an assertion, and the strict pleading requirements involved, SIG Sauer's counsel have spent the short time since service of the Final Invalidity Contentions carefully analyzing the facts (including those contained in several file histories of Defendant's various patent applications) and reviewing the governing law.

Additional evidence of inequitable conduct is expected to come to light during discovery and indeed, SIG Sauer contends that Defendant should have already produced the prior art references at issue, in response to document requests Plaintiffs served in October 2015.[5]

In addition, further evidence of inequitable conduct at issue in the proposed affirmative defense did not occur until recently, long after the deadline to amend the pleadings. Specifically,

---

[5] For example, Plaintiffs' document requests served on October 21, 2015 required Defendant to produce known prior art. Despite the fact that the Bross and Wollmann references had been cited by the USPTO in other applications concerning Mr. Freed's grip extender invention, and the fact that Mr. Freed and his patent counsel themselves cited Wollmann in another grip extender application in December 2015, Defendant failed to produce either Bross or Wollmann in response to Plaintiffs' discovery.

8

on December 7, 2015, Mr. Freed's patent counsel, Mr. Davison provided the USPTO with a characterization of Wollmann during the prosecution of one of Mr. Freed's other grip extender patent applications.  *See* Exh. A, p.15, ¶42(c).  Through that disclosure, Messrs. Davison and Freed represented that this piece of prior art disclosed a way of using a grip extender to engage a magazine's floor plate – a tacit admission that the reference was material to the claims of the '764 Patent.  *See id.*  Because Mr. Davison is the same attorney who in 2003-2005 prosecuted the application that led to the '764 Patent, his statement in 2015 is circumstantial evidence of his appreciation of the prior art's materiality in 2003-2005.

Moreover, this particular piece of evidence also supports an intent to deceive the USPTO.  Messrs. Davison and Freed selectively disclosed Wollmann in some of Mr. Freed's patents, but did not do so during prosecution of the application underlying the '764 Patent because doing so would have prevented that application from issuing into a patent.  As some of the evidence supporting SIG Sauer's affirmative defense simply did not exist at the original deadline for amendment of pleadings, SIG Sauer cannot be said to have been dilatory in presenting it now.

### B. Defendant Will Not Be Prejudiced.

There can be no prejudice to Defendant from the proposed amendment, for several compelling reasons.  First, "the close of discovery is still ... months away, so [Defendant] has time to arrange any additional discovery needed" to respond to the proposed defense.  *Forrester*, 2011 U.S. Dist. LEXIS 28468, at *6-7 (granting motion to amend where discovery deadline was still three months away).

Second, the prior art at issue in SIG Sauer's inequitable conduct defense is already in the case through Plaintiffs' Final Invalidity Contentions and will be before the Court.  There will be little (if any) additional work needed to determine whether those references would have been "material" to the prosecution of the application underlying the asserted patent.  (*See* Section

9

III(C)(1), below.)  The only additional issue that will actually be brought into this case through amendment will be the narrow question of whether Messrs. Freed and Davison had a specific intent to deceive the USPTO.  (*See* Section III(C)(2), below.)

Third, it is likely that the contentions at issue in SIG Sauer's affirmative defense will only involve discovery from individuals who are within Defendant's possession, custody, or control – namely Messrs. Freed and Davison.  Thus, the only arguable "burden" to be imposed on Defendant will be for it to respond fully to previously served discovery, comply with some limited additional discovery, and formally address the defense during the litigation.  Such a "burden" is something that accompanies any request to add an affirmative defense – of inequitable conduct, or otherwise.

In addition, the existing affirmative defense of patent misuse overlaps with the proposed defense of inequitable conduct – specifically whether Defendant is pursuing claims of patent infringement under a fraudulently obtained patent.[6]  Thus, SIG Sauer will already be seeking discovery into whether Defendant fraudulently obtained the '764 Patent under the patent misuse defense and Defendant will need to address these overlapping contentions.  As a consequence, the addition of an inequitable conduct defense will add little, if any, actual new issues into this case and impose virtually no burden on Defendant – let alone an undue one.

C. **Amendment Will Not Be Futile.**

"In assessing futility [of a proposed amendment], the ... court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Adorno v. Crowley Towing*

---

[6]  Case law supports that "patent misuse" can be based on contentions that a party is pursuing claims of infringement under a fraudulently obtained patent.  *See*, *e.g.*, *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344 (Fed. Cir. 2007); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998); *Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100 (N.D. Cal. 2011).

*& Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). To survive a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *González Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 247 (1st Cir. 2012), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Under the Rule 12(b)(6) standard, the court must take the factual allegations ... as true, with reasonable inferences in the plaintiff's favor[.]" *Drew v. New Hampshire*, Civil No. 14-CV-462-JD, 2015 DNH 036, 2015 U.S. Dist. LEXIS 23393, *2 (D.N.H. Feb. 26, 2015).

As noted previously, inequitable conduct must be pled with particularity in the manner required by Fed. R. Civ. P. 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). The pleading must include sufficient allegations of underlying fact from which the Court may reasonably infer that a specific individual both knew of the withheld material information (or the falsity of a material misrepresentation), and withheld or misrepresented that information with a specific intent to deceive the USPTO. *See id.*, at 1328-29. Additionally, the pleadings must also permit the inference that the patent applicant "appreciated that [the omitted reference] was material." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (applying *Exergen*).

"[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the [US]PTO, that prior art is but-for material if the [US]PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense,* 649 F.3d at 1291.[7] "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id*. at 1290.

---

[7] It should be noted that while "but-for materiality" is generally a required showing, *Therasense* also recognized "an exception in cases of affirmative egregious misconduct." *Id*. at 1292.

11

### 1. Materiality

It cannot be disputed that while the application underlying the '764 Patent was still pending before the USPTO, Messrs. Freed and Davison became aware of Bross and Wollman. (*See* Exh. A, pp.10-12, ¶¶22-28.)  Additionally, it cannot be disputed that during this same time Messrs. Freed and Davison referred to Bross and Wollmann as prior art in this field, in the specification of another patent application directed to a grip extender.  (*See id.*, pp.13-14, ¶¶ 36-40.)

Plaintiffs' Final Invalidity Contentions, attached to and incorporated in SIG Sauer's proposed affirmative defense by reference, include charts that specifically map each of the asserted claims' limitations to the relevant disclosures of Bross and Wollmann.  (*See id.*, p.16, ¶46 & Exh. 11 thereto.)  These contentions identify how Bross and Wollmann each serves as an anticipatory reference in this case for the asserted claims of the '764 Patent under, at least, the claim constructions ordered by the Court and/or Defendant's final infringement contentions.

Because these two references disclosed limitations that the examiner believed to be missing from the prior art of record (as evident from the examiner's allowance of the '764 Patent), they were non-cumulative with respect to the prior art before the USPTO during prosecution.  (*See id.*, p.16, ¶45.)  Because these references are anticipatory in this case, they would have been "material" to the patent prosecution as a matter of law.  *Therasense,* 649 F.3d at 1291-92 ("[I]f a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the [US]PTO [*i.e.*, a preponderance of the evidence].").

SIG Sauer submits that it has sufficiently pled the requisite elements of inequitable conduct directed to materiality of undisclosed references.

### 2. Specific Intent to Deceive

The only reasonable inference to be drawn from the facts pleaded in SIG Sauer's proposed affirmative defense is that Messrs. Freed and Davison specifically withheld the prior art at issue with an intent to deceive the USPTO into issuing the '764 Patent.  It cannot be disputed that both Messrs. Freed and Davison had a duty to disclose Bross and Wollmann to the USPTO examiner reviewing the application underlying the '764 Patent. (Exh. A, pp.6, 12, ¶¶4-10 & 29-30.)  Furthermore, Messrs. Freed and Davison cannot dispute that they had over two years to disclose Bross and Wollmann during that prosecution, but failed to do so.  (*Id*., p.12, ¶31.)

Messrs. Freed and Davison were aware of the content of these references and that these references were material.  Specifically, at the same time that they were withholding Bross and Wollmann from the examiner handling the application underlying the '764 Patent, they were discussing the content and importance of this prior art in the specification of a co-pending application related to an invention in the same field.  (Exh. A, pp.13-14, ¶¶36-40, & Exh. 7.)  By making those statements in the co-pending application, Messrs. Freed and Davison tacitly admitted that Bross and Wollmann disclosed elements that the examiner believed to be missing from the prior art of record during prosecution of the application underlying the '764 Patent. (*See* Exh. A, p.13, ¶38, & Exh. 7.)  Worse, subsequent statements in 2015 after issuance of the '764 Patent in 2005 – by the same counsel prosecuting both the '764 Patent and a later patent application – is perhaps the best available best available evidence of just how much that counsel appreciated the materiality of the undisclosed references in the relevant 2003-2005 time period. (*See* Exh. A, pp.14-15, ¶42.)

SIG Sauer submits that it has sufficiently pled the requisite element of inequitable conduct directed to Defendant's specific intent to defraud the USPTO.  Findings of inequitable

conduct based upon inferences of deceptive intent in similar fact patterns concerning the selective non-disclosure of prior art, or outright concealment of other information, have been affirmed by the Federal Circuit following *Therasense*. *See, e.g., Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1188-1192 (Fed. Cir. 2014); *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1360-1363 (Fed. Cir. 2014); *Aventis Pharma, S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1333-1337 (Fed. Cir. 2012).

## CONCLUSION

SIG Sauer has demonstrated ample good cause for adding an affirmative defense of inequitable conduct, and that justice requires that SIG Sauer have the ability to present this defense. SIG Sauer respectfully requests that the Court grant their motion to amend their Reply to Counterclaims and Affirmative Defenses in the manner set for in Exhibit A, pp.5-18.

RESPECTFULLY SUBMITTED this 18th day of August, 2016.

**SIG SAUER, INC.,**

By its attorneys,

/s/ Laura L. Carroll
Laura L. Carroll (NH Bar #17444)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 345-3000
Fax: (617) 345-3299
Email: lcarroll@burnslev.com

Zachary R. Gates (NH Bar #17454)
GATES LAW OFFICE PLLC
122 Elmira Street, Suite A
Troy, PA 16947
Tel: (802) 522-0822
Email: zgates@gateslawofficepllc.com