IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC., CHECK-MATE INDUSTRIES, INC., CHECK-MATE INTERNATIONAL PRODUCTS, INC., NORDON, INC., and THOMAS PIERCE d/b/a PIERCE DESIGN<br><br>Plaintiffs,<br>v.<br><br>FREED DESIGNS, INC.,<br><br>Defendant. | Civil Action No.: 1:14-cv-461<br><br>JURY TRIAL DEMANDED |

**DEFENDANT FREED DESIGNS, INC.'S OPPOSITION TO SIG SAUER'S MOTION TO AMEND ITS AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIM**

### I. THIS COURT SHOULD REJECT SIG SAUER'S MOTION TO AMEND AS UNTIMELY AND FUTILE

In this circuit, a district court can and should deny an untimely, futile motion to amend. *See*, *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12-14 (1st Cir., 2004), so holding, in denying *Steir*'s motion to amend under FRCP Rule 16(b). There, as here, the moving party, *Steir*, sought to amend after the Court-ordered cutoff date. Unlike here, the movant showed that the discovery responses of *Girl Scouts of the USA* were arguably misleading, thus arguably contributing to the delay. But the Court still denied *Steir*'s motion as untimely, and chided *Steir* for lack of diligence.

Here, the Court's scheduling order set June 15, 2015, or 14 months ago, as the cutoff date for amendments. The failure to file its motion in a timely manner is a critically important factor that should weigh against SS's untimely motion, whether under FRCP Rule 15(a) or 16(b).[1]

Sig Sauer, Inc. ("SS") has never sought an extension of the June 15, 2015, cutoff date from the Court, and with good reason. FRCP Rule 16(b) states that a scheduling order "shall not be

---

[1] *Steir*, 383 F.3d at 12, further provides, with respect to a motion under Fed.R.Civ.P. 15(a), that "[o]nce a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed.R.Civ.P. 16(b). That "more demanding" standard is applicable in the case at bar.

1

modified except upon a showing of good cause, and by leave of the district judge….." Rule 16(b)'s "good cause" calls on the movant to show its diligence before and after the cutoff date. The longer the delay, the greater showing of diligence movant must provide. *See Adorno v. Crowley Towing and Transp. Co.,* 443 F.3d 122 (1st Cir. 2006) ("The bar for a plaintiff tendering an amended complaint is higher after a motion for summary judgment has been filed, as the plaintiff must demonstrate 'that the proposed amendments were supported by substantial and convincing evidence'"), *citing Resolution Trust Corp. v. Gold,* 30 F.3d 253 (1st Cir. 2004). SS fails to show diligence, let alone heightened diligence.

## II. THIS COURT SHOULD REJECT SIG SAUER'S MOTION TO AMEND AS LACKING GOOD CAUSE

SS has not demonstrated good cause, as required by Rule 16, for amending SS's answer to FD's counterclaim. SS's proposed new defense is based entirely on publicly-available documents that existed well before the June 15, 2015 Court-ordered cutoff date for amending the pleadings. SS's proposed amendment relies primarily on two U.S. patents, namely, Wollmann (U.S. Patent No. 6,557,287 issued May 6, 2003) and Bross (U.S. Patent No. 4,495,720 issued January 29, 1985). SS alleges, in error, that these two patents are material to the validity of the claims at issue here. Neither is.

SS relies on other documents that SS alleges are relevant to inequitable conduct. But nearly all of these other documents were also in the public domain long before the cutoff date. The following other documents SS filed were all publicly available before SS filed this suit: Docket numbers 68-11; 68-9; 68-6; 68-5; 68-4; and 68-3. At least part of Docket number 68-12 was also publicly available before SS filed this suit, too.

In its final invalidity report ("SS's invalidity report") served on FD on July 19, 2016, and for the first time in this case, SS identified Bross and Wollmann as documents that SS will rely

2

on to support its invalidity defenses. That report also states, in passing, but again for the first time, that SS may assert inequitable conduct as an affirmative defense.[2] As SS concedes at page 3 (Dkt.#68) of its motion, Freed Designs, Inc. ("FD") immediately objected.

SS provides no good cause for its late motion to amend. FD has not impeded SS's discovery. And the publicly-available documents attached to SS's motion do not show that the PTO ever cited Wollmann or Bross against a claim to a one-piece extender that slides onto a magazine from the top, as the claims at issue here require—meaning that *both* Bross and Wollmann are immaterial to validity/patentability. No reasonable patent practitioner would conclude otherwise.

SS has never moved to compel any discovery from FD. SS could have, but has not deposed either Robert Freed, FD's president, and sole inventor on the '764 patent in suit, or FD's patent lawyer, Jim Davison. In fact, no depositions were taken notwithstanding the fact that the parties conducted their required discovery plan conference under Fed. R. Civ. P. 26(f) on or about April 8, 2015.[3] So SS's allegations of Freed's and Davison's alleged intent to mislead the PTO, in its proposed new affirmative defense, are therefore based solely on speculation and innuendo.

SS also does not provide any good cause for SS's failure to review the documents, on which their proposed new defense relies, or for SS's failure to assert inequitable conduct before

---

[2] SS's April 28, 2016, response to FD's Interrogatory Number 2 reading "Describe in detail the complete factual and legal basis for SS's assertion of invalidity of each Asserted Claim of the '764 Patent", SS doesn't identify Bross or Wollmann or assert inequitable conduct.

[3] In fact, no depositions were taken in the early, related, lawsuit in California, styled *Freed Designs, Inc. v. Sig Sauer, Inc.*, Case Number 2:13-cv-09570-ODW-AGR (and referenced in the above captioned New Hampshire case filed by Sig Sauer, Inc., et al., in its Complaint and Demand for Jury Trial, at ¶¶'s 11 – 12 (Dkt#1). The California case was filed by FD on December 31, 2013. Hence, Sig Sauer has had years and years to take depositions, yet failed to do so.

the cutoff date. Again, these are all publicly available documents, and were available for SS's review long before the June 15, 2015 cutoff date.

SS does refer to a December 7, 2015 document that became publicly available to SS that same month, namely, December of 2015. This document is not even attached to Exhibit A, contrary to what SS asserts. But even this document does not excuse SS's inattention to all of the other documents that were publicly available prior to the cutoff date, or SS's silence about its proposed new defense for the first 8 months of 2016. SS has vast financial resources, and countless, able lawyers and support personnel at their disposal. SS's unpersuasive explanation about their delay is unsupported by any declaration from anyone. *See, e.g., O'Connell, citing Rosario-Diaz v. Gonzalez 140 F.3d at 315*[4]; *See also Grevois v. Wentworth-Douglass Hosp.,* Civil No. 12-cv-131-JL, 2014 DNH 17, 2014 U.S. Dist. WL 309354 at *14 (D.N.H. Jan 28,2014)[5]. This Court should not condone SS's inattention, and should instead deny the proposed amendment as far too late and without good cause.

### III. THIS COURT SHOULD REJECT SIG SAUER'S MOTION TO AMEND AS FUTILE

SS's proposed tardy motion is also futile. Neither the Wollmann patent nor the Bross patent is remotely material to the validity of the '764 patent claims at issue in this case, as the following charts (beginning on the next page) show:

---

[4] "Indifference" by the moving party "'seal[s] off this avenue of relief" irrespective of prejudice because such conduct is incompatible with a showing of diligence necessary to establish good cause.

[5] This court found that it was untimely, and without good cause, to seek to add a claim where the proposed claim was based on information obtained a little over two months prior to filing of the amendment.

# WOLLMANN COMPARED (CLAIM 1)

| | |
|---|---|
| A grip extender in combination with a handgun comprising: a handgun using a variety of different model magazines, a grip extender with symmetrical interior side walls, an exterior front wall configured to a user's grip, and a rear wall, for use with the handgun magazine to fill a gap between the magazine and the handgun, with said magazine having an open top for loading ammunition cartridges and a closed bottom for containing said ammunition cartridges, said closed bottom ending in a floor plate, of determinable thickness, with a lower surface and an upper surface, with said floor plate also having a peripheral surface larger than a peripheral surface of a corresponding body of the magazine, said grip extender further comprising: | 1. U. S. patent 6,557,287 to Wollmann: Wollmann's "extension" does not fit onto a "floor plate having a peripheral surface larger than a peripheral surface of a corresponding body of the magazine", as claimed. |
| a) one-piece collar slideably mounted from the open top of said magazine and subsequently seated at the closed bottom of said magazine thereby substantially filling any gap resulting from a length of the magazine protruding from a handgun when said magazine is engaged into said handgun, said collar having a size and shape sufficient to elastically receive and grip the magazine and magazine floor plate thereby securely retaining the collar and having at least one pair of opposed tangs oriented inward from the interior side walls of the collar; and | 2. Wollmann's "extension" must have two pieces, and can not be a "one-piece collar", as claimed.<br>3. Wollmann's "extension" is not "slideably mounted from the open top of said magazine and subsequently seated at the closed bottom of said magazine thereby substantially filling any gap," as claimed. |

| | |
|---|---|
| b) further comprising at least one pair of opposed ribs, said ribs oriented inward from the interior side walls of the collar, with a bottom shoulder of said ribs distanced above the tangs, said distance approximately equal the determinable thickness of the magazine floor plate; and | |
| c) when sliding the grip extender into its final position on the magazine a step of the said tangs engages the lower surface of the floor plate and captures the corresponding upper surface of floor plate against said the bottom shoulder of the opposed ribs. | |

## BROSS COMPARED (CLAIM 1)

| | |
|---|---|
| A grip extender in combination with a handgun comprising: a handgun using a variety of different model magazines, a grip extender with symmetrical interior side walls, an exterior front wall configured to a user's grip, and a rear wall, for use with the handgun magazine to fill a gap between the magazine and the handgun, with said magazine having an open top for loading ammunition cartridges and a closed bottom for containing said ammunition cartridges, said closed bottom ending in a floor plate, of determinable thickness, with a lower surface and an upper surface, with said floor plate also having a peripheral surface larger than a peripheral surface of a corresponding body of the magazine, said grip extender further comprising: | 1. U. S. patent 4,495,720 to Bross: Bross's "pommel base" (extender) lacks the "exterior front wall configured to a user's grip," as claimed.<br>2. Bross's "pommel base" does not "fill a gap between the magazine and the handgun," as claimed.<br>3. Bross's "pommel base" does not have a "closed bottom ending in a floor plate," as claimed.<br>4. Bross's "pommel base" does not have "said floor plate having a peripheral surface larger than a peripheral surface of a corresponding body of the magazine," as claimed |
| a) one-piece collar slideably mounted from the open top of said magazine and subsequently seated at the closed bottom of said magazine thereby substantially filling any gap resulting from a length of the magazine protruding from a handgun when said magazine is engaged into said handgun, said collar having a size and shape sufficient to elastically receive and grip the magazine and magazine floor plate thereby securely retaining the collar and having at least one pair of opposed tangs oriented inward from the interior side walls of the collar; and | 1. Bross's "pommel base" is not "slideably mounted from the open top of said magazine and subsequently seated at the closed bottom of said magazine thereby substantially filling any gap…," as claimed.<br>2. Bross's "pommel base" does not have "a collar having size and shape sufficient to elastically receive and grip the magazine and magazine floor plate," as claimed.<br>3. Bross's "pommel base" does not have |

|  | a [tang] step [that] engages the lower surface of the floor plate and captures the corresponding upper surface of floor plate against the bottom shoulder of [the] opposed ribs, as claimed. |
|---|---|
| b) further comprising at least one pair of opposed ribs, said ribs oriented inward from the interior side walls of the collar, with a bottom shoulder of said ribs distanced above the tangs, said distance approximately equal the determinable thickness of the magazine floor plate; and |  |
| c) when sliding the grip extender into its final position on the magazine a step of the said tangs engages the lower surface of the floor plate and captures the corresponding upper surface of floor plate against said the bottom shoulder of the opposed ribs. |  |

Below (on the next page) are copies of drawings from the '764 patent in suit, at the top, and from the Wollmann patent, below that, and then finally from the Bross patent. The Wollmann drawing shows a two-piece extension. By contrast, the claimed extender in suit must be one piece. Wollmann's extension must be two pieces to fit onto a magazine from the bottom. Bross's extender, too, must attach from the bottom of a magazine, and cannot attach from the top of a magazine. FD's claims call for a one piece extender that must slide onto a magazine from the top, not the bottom. Neither Wollmann nor Bross in any way disclose this claimed feature and thus cannot anticipate claim 1 or 4 of the patent in suit.

**'764 Patent**



**Wollmann Patent**



**Bross Patent**



As can be seen, the Wollmann extension includes, **and must include**, two pieces. The claimed extender in **the '764 Patent in suit must be one piece**, by contrast. Wollmann's first piece slides onto the bottom of a gun magazine, and Wollmann's second piece attaches to the first piece, but only once the first piece is in place. In summary, Wollmann's magazine extender

9

is, and must be, two pieces, in order to fit onto a magazine from the bottom. FD's claims requires a one piece extender that must slide onto a magazine from the top, not the bottom.

Bross's pommel base, a kind of extender, must also attach to a magazine from the bottom of the magazine, and cannot be slid onto a magazine from the top. Nor is Bross's pommel base elastic, and cannot elastically pass over, then capture a plate at the bottom of a magazine. Instead, the bottom of a magazine is inserted into a trough in Bross's extender, then slid left or right in order to engage slots inside that trough with flanges on the end of the magazine.

SS's motion is therefore futile. Bross and Wollmann patents are different from the claims to the extenders in suit, and both are immaterial to validity of claims 1 and 4 of the patent in suit.

### IV. THE COURT SHOULD DENY SS'S MOTION TO AMEND AS UNTIMELY AND AS FUTILE

FD asks this Court to deny SS's motion to amend. SS's motion does not meet the rigorous diligence standards of FRCP Rule 16(b). Even if SS did meet this rigorous diligence standard, SS's proposed new defense is still futile. The Bross and Wollmann patents, as shown above, are clearly immaterial to the validity of FD's claims at issue.

Dated: August 31, 2016

/s/Michael J. Bujold
Michael J. Bujold (NH Bar No. 0388)
patent@davisandbujold.com
DAVIS & BUJOLD, P.L.L.C.
112 Pleasant Street
Concord, NH 03301-2931
603-226-7490

*Attorney for Freed Designs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically on August 31, 2016 to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/Michael J. Bujold